S04G1689. SIMS v. THE STATE.
(614 SE2d 73)

HUNSTEIN, Justice.

We granted appellant Willie Sims' petition for certiorari in *Sims v. State,* 267 Ga. App. 572 (1) (600 SE2d 613) (2004), in order to address whether the Court of Appeals applied the appropriate standard of appellate review of the judgment entered on a special verdict that a criminal defendant is competent to stand trial. Because we reject the "any evidence" standard for review of competency verdicts, we reverse the judgment of the Court of Appeals.

Prior to his aggravated sodomy conviction, Sims filed a plea of mental incompetency based on mental retardation pursuant to OCGA § 17-7-130.[1] A special jury found him competent and Sims and his co-defendant were thereafter tried together. Sims was found guilty of aggravated sodomy and sentenced as "guilty but mentally retarded."[2]

---

[13] OCGA § 24-9-20.

[14] *Williams v. State,* 257 Ga. 761 (363 SE2d 535) (1988); OCGA § 24-9-83.

[15] *Jones v. State,* 265 Ga. 138, 141 (454 SE2d 482) (1995).

[1] Unlike the issue of sanity which is a retrospective inquiry into a defendant's criminal responsibility at the time of the crime, competency involves an inquiry into a defendant's current capacity to be subjected to a trial. *Baker v. State,* 250 Ga. 187 (1) (297 SE2d 9) (1982).

[2] The Court of Appeals in *Pitts v. State,* 263 Ga. App. 322, 323 (587 SE2d 811) (2003) describes the crime as follows:

> Co-defendant Sims came up and joined Bradford and Pitts. Pitts then grabbed [the victim's] arm and said she was either going to give him a "piece of ass or a blow job." Bradford, at that point, walked a short distance away. When [the victim] said no, Pitts hit her in the face and then Sims hit her. She was dragged into the woods, her dress torn, and Pitts forced his penis into her mouth while Sims held her down. Sims said he wanted a "piece of ass," so [the victim] was flipped over and he

Sims appealed contending the evidence was insufficient to sustain the special jury's finding that he was fit to proceed to trial. Finding that there was some evidence to support the jury's verdict of competency, the Court of Appeals affirmed. See *Sims v. State*, supra, 267 Ga. App. at 572 (1).

1. Competency involves a defendant's mental state at the time of trial. *Lindsey v. State*, 252 Ga. 493 (III) (314 SE2d 881) (1984). The constitutional test for competency seeks to determine whether the defendant is capable of understanding the nature and object of the proceedings, whether he comprehends his own condition in reference to such proceedings and whether he is capable of rendering his counsel assistance in providing a proper defense. *Norris v. State*, 250 Ga. 38 (3) (295 SE2d 321) (1982). See *Dusky v. United States*, 362 U. S. 402 (80 SC 788, 4 LE2d 824) (1960). The constitutional requirement of trial competency "is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Riggins v. Nevada*, 504 U. S. 127, 139-140 (112 SC 1810, 118 LE2d 479) (1992) (Kennedy, J., concurring, citing *Drope v. Missouri*, 420 U. S. 162, 171-172 (95 SC 896, 43 LE2d 103) (1975)). See also *Medina v. California*, 505 U. S. 437 (112 SC 2572, 120 LE2d 353) (1992); *Pate v. Robinson*, 383 U. S. 375 (86 SC 836, 15 LE2d 815) (1966).

OCGA § 16-2-3 establishes the presumption that a person is mentally competent to stand trial. OCGA § 17-7-130 (a) permits a criminal defendant to procure review of mental competency by properly alleging mental incompetency to stand trial. Once alleged, the court is required to conduct a trial whereby a special jury determines the defendant's mental competency. Id. We have previously held that an OCGA § 17-7-130 special jury trial proceeding to determine competency is in the nature of a "civil proceeding" wherein the defendant bears the higher burden of persuading the jury by a preponderance of the evidence he is mentally incompetent. *Partridge v. State*, 256 Ga. 602 (1) (351 SE2d 635) (1987). We have also concluded that the procedure required by Georgia to determine if a criminal defendant is competent to stand trial offers a safeguard against the risks and limitations suffered by mentally incompetent individuals. *Head v. Hill*, 277 Ga. 255, 262 (II) (B) (587 SE2d 613) (2003). The standard of appellate review applied by the Court of Appeals in affirming the finding of competency in this case was whether "any evidence" existed

---

attempted to enter her from behind. At this point, neighbors were gathering and one yelled she was calling the police.

to support the competency verdict. *Pope v. State*, 184 Ga. App. 547 (1) (362 SE2d 123) (1987) (considering the general grounds for civil trials, the court would not have any discretion to grant a new trial where there was "any evidence" to support the jury's verdict). Sims argues that this significantly deferential civil standard of review is inadequate to protect the constitutional standard implicated in a competency trial because it creates an insurmountable obstacle to meaningful appellate review of competency determinations.

We agree that the "any evidence" standard of review thwarts genuine review of an appeal from a verdict of competency because the presumption of competency would always provide some evidence in support of a finding of competency. Even though an OCGA § 17-7-130 trial on competency is not a criminal action, "it is quasi-criminal in a sense that a finding of competency is a necessary prerequisite to subjecting the accused to a criminal trial for the offense charged." *Jackson v. State*, 548 SW2d 685, 690 (Tex. Crim. App. 1977). In our view, any meaningful determination of competency is possible only if appellate review permits an accurate assessment of the presumption of competence. We conclude that because a substantive competency claim requires the defendant to meet the higher standard of proof of incompetency by a preponderance of the evidence, *Partridge v. State*, supra, 256 Ga. 602 (1), the appropriate standard of appellate review is whether after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was incompetent to stand trial. Accord *Brown v. State*, 250 Ga. 66 (2) (c) (295 SE2d 727) (1982).[3]

2. In applying *Pope* and the "any evidence" principle long applicable to review of civil cases, the Court of Appeals concluded that because the testimony of the State's expert constituted "some evidence in support of the verdict," there was sufficient evidence to sustain the jury's verdict that Sims failed to carry his burden of proving his mental incapacity by a preponderance of the evidence. Sims asserts that if utilizing a less-deferential standard of appellate review, the evidence was insufficient to support a finding of mental competency. In the interest of judicial economy, we will not remand this matter to the Court of Appeals, but will consider the merits of Sims' claim.

Sims contends that there was no reasonable evidence that he was capable of assisting his counsel. Sims has an IQ of 45-46, is considered moderately mentally retarded and although thirty-two years old at

---

[3] To the extent that *Stowe v. State*, 272 Ga. 866 (2) (536 SE2d 506) (2000) and *Pope v. State*, supra, and any other cases are in conflict, they are overruled.

the time of trial, his IQ corresponded to a mental age of seven. A mental health expert who had performed over 2,700 criminal competency evaluations stated that he was not aware of any person with an IQ as low as 45 who had been found competent to stand trial. He testified regarding Sims' ability to function within the legal system and concluded that it was 99 percent probable that Sims was not competent to stand trial. The court-appointed forensic psychologist who performed a Competency Assessment to Stand Trial (CAST) evaluation on Sims testified that whereas Sims was competent in the area of knowledge of the charges against him, that he could apprise the roles of defense counsel, the prosecuting attorney, the judge and the jury and could refrain from irrational and unmanageable behavior, Sims was not competent to give cogent testimony, to withstand cross-examination without incriminating himself, to be able to remember facts clearly, to understand the proceedings, or to be able to participate or assist in his own defense by making a decision after receiving advice. The forensic psychiatrist who testified on behalf of the State stated that although Sims would not necessarily understand the contents of the trial and that he would be susceptible to giving incorrect answers to the prosecutor, Sims nevertheless "minimally" met the competence requirement to stand trial primarily because Sims was aware of the charges against him, understood the consequences if convicted, and had the capacity to work with his attorney on his defense.

"The threshold for competency is easily met in most cases; it exists so long as a defendant 'is capable at the time of the trial of understanding the nature and object of the proceedings going on against him and rightly comprehends his own condition in reference to such proceedings . . . .' " *Lewis v. State*, 279 Ga. 69, 70 (3) (608 SE2d 602) (2005). The factors to consider in determining a defendant's capability to assist in his defense include whether the defendant can adequately consult with others, knows the names and functions of those involved with the case, and reasonably understands the rules, the specific charges, the penalties and the consequences of the proceedings. *Drope v. Missouri*, supra, 420 U. S. at 171 (11). Competency also encompasses the ability

> to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense

strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial. [Cit.]

*State v. Snyder*, 750 So2d 832, 852 (La. 2004). A competency determination should be supported by factual determinations and a low IQ score alone is just one indicia, not a determinative finding, that a defendant is unable to stand trial.

Reviewing the evidence in the light most favorable to the State, a rational trier of fact could not have concluded that Sims failed to prove that he was not competent to stand trial by a preponderance of the evidence where the evidence showed that Sims did not have the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or possessed a rational understanding of the proceedings against him. Accordingly, we concur with Sims that allowing him to stand trial amounted to a breach of the fundamental principle of our adversary system that an incompetent defendant does not stand trial, and we reverse the judgment of the Court of Appeals.

*Judgment reversed. All the Justices concur, except Carley, Thompson and Hines, JJ., who dissent.*

CARLEY, Justice, dissenting.

The majority adopts the standard of appellate review set forth in *Brown v. State*, 250 Ga. 66, 71-72 (2) (c) (295 SE2d 727) (1982), which is applicable to a jury's finding of sanity in a criminal case, rather than to a finding of competency to stand trial. It does so, based in part, on a Texas court's opinion that a proceeding to determine competency to stand trial is "quasi-criminal." To the contrary, however, it is well settled in Georgia that "[a] competency trial ' "is in the nature of a civil proceeding and the defendant has the burden to prove incompetency by a preponderance of the evidence. (Cit.)" (Cit.)' [Cit.]" *Stowe v. State*, 272 Ga. 866, 867 (2) (536 SE2d 506) (2000). Nevertheless, because the presumption of competence remains even after the introduction of evidence in rebuttal, I do not disagree with the general conclusion in Division 1 of the majority opinion that the proper standard of appellate review under Georgia law is whether, "after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was incompetent to stand trial. [Cit.]" Maj. op. p. 391. See also *Nagel v. State*, 262 Ga. 888, 892 (2) (b) (427 SE2d 490) (1993) (a civil proceeding). I do not, however, agree with the majority's specific application of that standard to the evidence as set forth in Division 2. Accordingly, I dissent to the reversal of the Court of Appeals' judgment in this case.

In determining that a rational trier of fact could not have found that Sims failed to prove his incompetency by a preponderance of the evidence, the majority chooses to ignore extensive case law derived from *Brown* over the period of more than two decades since it was decided. Under the clear and consistent holdings of this Court, the jury may still rely on the presumption of sanity or competency, each of which arises from OCGA § 16-2-3, and the jury's determination that the defendant was sane or competent should be upheld, "unless the proof of insanity [or incompetence] is *overwhelming*. [Cit.]" (Emphasis in original.) *Rodriguez v. State*, 271 Ga. 40, 42-43 (1) (518 SE2d 131) (1999). See also *Whitner v. State*, 276 Ga. 742, 745 (6) (584 SE2d 247) (2003); *Boswell v. State*, 275 Ga. 689, 691 (2) (572 SE2d 565) (2002).

Furthermore, the jury is not bound by the opinions of expert witnesses regarding a defendant's mental state, but may instead decide what credibility and weight to give those opinions. *Boswell v. State*, supra. Here, Sims' only expert was Michael Singletary, a mental retardation specialist who wanted to perform psychological testing, but who actually never evaluated or even met Sims. Singletary's testimony of a high probability of incompetence based solely on Sims' reported IQ may be sufficient to require that a competency hearing be conducted but, as the majority itself recognizes, it is not determinative of his ability to stand trial. See *Holloway v. State*, 257 Ga. 620-621 (1), (2) (361 SE2d 794) (1987). The court-appointed psychologist, Dr. Michael Shapiro, testified that Sims was competent in his knowledge of the charges against him, but was incompetent to participate or assist in his own defense, primarily because he would be unable to withstand cross-examination.

The expert testimony of Singletary and Dr. Shapiro was not undisputed. "Evidence conflicting with the conclusions reached by [these two] experts includes the presumption of [competency] but does not stop there." *Harris v. State*, 256 Ga. 350, 355 (6) (349 SE2d 374) (1986). The State called Dr. Suzanne Canning, a psychiatrist who examined Sims and found that he was competent to stand trial because, as the majority summarizes, he "was aware of the charges against him, understood the consequences if convicted, and had the capacity to work with his attorney on his defense." Maj. op. p. 392. In Dr. Canning's opinion, Sims was capable of testifying in his own defense. Although Dr. Canning also recognized that having him testify may not be wise, the majority acknowledges that the capacity to testify if necessary to defense strategy is only one of many factors in determining a defendant's ability to assist in his defense. As this Court unanimously held just four years ago,

the trier of fact is not necessarily bound by any one factor. [Cit.] " 'Ordinarily, the sufficiency of the reasons given by witnesses for their opinion[s] as to a person's sanity or insanity cannot be determined as a matter of law by the court, but is a question for the jury.' (Cits.)" [Cit.] Where a defendant cannot satisfy all of the . . . functions or . . . factors which are used to assess competency, the question for the factfinder is whether "enough are satisfied to allow the trial to go forward." [Cit.]

*Stowe v. State*, supra at 868-869 (2). Therefore, this case is clearly distinguishable from those in which " 'there was no contrary expert testimony tending to rebut the defendant's' " experts. *Barge v. State*, 256 Ga. App. 560, 564 (2) (568 SE2d 841) (2002). Even extensive expert evidence introduced by the defendant does not demand a finding of incompetence where, as here, the State presents at least some conflicting expert testimony. See *Brown v. State*, 246 Ga. App. 60, 67 (4) (539 SE2d 545) (2000).

Assuming that the evidence of incompetence to stand trial "was strong, particularly the expert testimony, it was not overwhelming." *Wilson v. State*, 257 Ga. 444, 450 (11) (359 SE2d 891) (1987). Therefore, the jury was "authorized to rely on the presumption of [competency] in OCGA § 16-2-3 because the evidence of [incompetence] was not overwhelming. [Cit.]" *Stanley v. State*, 242 Ga. App. 597, 598 (1) (530 SE2d 506) (2000). If the evidence is reviewed in the light most favorable to the jury's verdict, it is clear that a rational trier of fact certainly could have found that Sims failed to prove by a preponderance of the evidence that he was incompetent to stand trial. The majority simply substitutes its finding of incompetency for the contrary finding reached by the jury. That is not proper application of the appellate standard of review, but a usurpation of the fact-finding function. As the evidence of Sims' incompetence "was hardly overwhelming," the judgment entered by the trial court on "the jury's verdict [should] be affirmed. [Cit.]" *Whitner v. State*, supra.

I am authorized to state that Justice Thompson and Justice Hines join in this dissent.

DECIDED JUNE 6, 2005.

*Jo Carol Nesset-Sale, Sutherland, Asbill & Brennan, John W. Bonds, Jr., Sidney L. Moore III*, for appellant.

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney*, for appellee.

*Bondurant, Mixson & Elmore, Michael B. Terry, Sarah M. Shalf, Sabrina D. Rhinehart, James C. Bonner, Jr.,* amici curiae.