Arrester Joe SMALLWOOD, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–08–00717–CR.

Court of Appeals of Texas, Houston (14th Dist.).

July 7, 2009.

John W. Tunnell, Lufkin, TX, for Appellant.

Dale Paul Summa, Lufkin, TX, for Appellee.

Panel consists of Justices SEYMORE, BROWN, and SULLIVAN.

## MAJORITY OPINION

CHARLES W. SEYMORE, Justice.

Without a recommendation, appellant pleaded guilty to aggravated robbery. The court found appellant guilty and assessed punishment at ten years' confinement. In two issues appellant contends (1) the trial court erred in not, sua sponte, conducting an informal inquiry into appellant's competence and (2) appellant was denied his right to counsel at a critical stage of the proceedings, i.e., the time period to file a motion for new trial. For reasons outlined below, we affirm the trial court's judgment.

### I. BACKGROUND

The State charged appellant with aggravated robbery. On October 24, 2007, the trial court appointed John Reeves to represent appellant and "to continue to represent [appellant] until the case is concluded, including appeal, if any, or until released by written order of this court."

On April 22, 2008, appellant pleaded guilty. At the plea hearing, the following interchanges occurred:

THE COURT: Are you competent and of sound mind?

[Appellant]: No, sir.

THE COURT: You're not?

[Appellant]: (Moving head side to side).

THE COURT: So are you insane?

*(Sotto voce discussion at defense table)*

[Appellant]: Oh, no, sir.

THE COURT: Okay. Are you competent?

[Appellant]: No, sir.

THE COURT: You're not. Do you know what "competent" means?

[Appellant]: No, sir.

[Defense Counsel]: He was special ed and he graduated, but he doesn't understand the big words.

THE COURT: Okay. Are you crazy?

[Appellant]: No, sir.

THE COURT: You know what "insane" means? It means you're crazy—

[Appellant]: Yes, sir.

THE COURT:—or you got a mental disorder. Do you have anything like that?

[Appellant]: Yeah, I got a mental disorder, but I'm not like just crazy, crazy.

THE COURT: What's your mental disorder, Mr. Smallwood?

[Appellant]: Slow-learning.

THE COURT: Okay. Aside from being just kind of slow-learning, do you understand why you're here?

[Appellant]: Yes, sir.

THE COURT: Do you know what the charge is against you?

[Appellant]: Yes, sir.

. . .

THE COURT: Other than having special education in school, have you ever been told you needed any special treatment or medical care for your condition?

[Appellant]: No, sir.

THE COURT: All right. Do you understand what I'm saying to you, then?

[Appellant]: Yes, sir.

THE COURT: At the time of this charge against you, on October 12th of 2007, Mr. Smallwood, on that occasion did you know what you were doing?

[Appellant]: Somewhat, yes, sir.

THE COURT: Okay. What's the limitation when you say "somewhat"? What do you mean?

[Appellant]: Well, I have problems, like, being stressed out. I just—it's so much I can take and everything. Just . . . Once I get so stressed out and think, I just blank out.

THE COURT: Okay. Well, you weren't under the influence of anything?

[Appellant]: No, sir.

THE COURT: Okay. Counsel, any concerns about his competency to go forward with this today?

[Defense Counsel]: No, Your Honor. We've had several discussions and we've also spoken with investigators in this case and we have agreed to testify truthfully, if called upon to do so, in regards to the codefendant.

After this interaction, defense counsel assured the court there was no basis for involuntariness or insanity at the time of the charge. The court then heard appellant's plea of guilty, and appellant told the court that what was stated in the indictment constituted his conduct. Appellant

also indicated he understood he was pleading without a recommendation. Although appellant did indicate he hoped he would receive probation, he stated he was pleading guilty "because I did what I did." He further affirmed that no one was making him plead guilty and he was doing so of his own free will. Finally, appellant affirmed he understood the rights he was forfeiting by pleading guilty.

The court accepted appellant's plea, but delayed a finding of guilt until an adjudication and sentencing hearing. On June 4, 2008, after taking judicial notice of the presentence investigation report and hearing defense witnesses the previous day, the court found appellant guilty, found a deadly weapon was used in the offense, and sentenced appellant to ten years' confinement.[1]

On June 26, 2008, appellant sent a letter to the court. He wrote that his attorney had "essentially terminated [their] relationship" after the sentencing. He also indicated he would like to file a motion for "shock probation or T.D.C. boot camp and probation," but was being denied access to the law library.

On July 7, 2008, appointed counsel, John Reeves, filed a notice of appeal and a motion to withdraw. In the latter, Reeves stated he had spoken with appellant by telephone on July 3, 2008. Appellant told Reeves appellant wanted a different sentence, wanted to "make a new deal in exchange for his testimony against [the] co-defendant," and asked about a retrial and appeal. Appellant also informed counsel he had talked to another attorney about his sentence and options. On July 10, 2008, the trial court granted the motion to withdraw and appointed new counsel for the appeal.

---

1. The Honorable Judge Paul E. White presided at the plea hearing; the Honorable Barry Bryan, at the adjudication/sentencing hearing.

## II. DISCUSSION

### A. *Hearing on Appellant's Competency*

■ In issue one, appellant contends "the trial court erred in failing to make a suggestion of incompetency on its own motion and failing to conduct an informal hearing into competence." We review a trial court's decision not to conduct an informal competency inquiry under an abuse of discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex.Crim.App. 1999). Courts presume a defendant is competent to stand trial and shall find him competent to stand trial unless a preponderance of the evidence proves him to be incompetent. Tex.Code Crim. Proc. Ann. art. 46B.003(b) (Vernon 2006).

A defendant is incompetent to stand trial if he lacks (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or (2) a rational, as well as factual, understanding of the proceedings against him. *Id.* art. 46B.003(a). Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial. *Id.* art. 46B.004(a). If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the trial court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial. *Id.* art. 46B.004(b). On such suggestion, the court shall determine by informal inquiry whether there is some evidence from any source to support a finding the defendant may be incompetent to stand trial. *Id.* art. 46B.004(c).

■ The trial court, however, is not required to conduct a competency inquiry unless the evidence suffices to create a bona fide doubt in the mind of the trial court about whether the defendant is legally competent. *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex.Crim.App.2003). Evidence usually suffices to create a bona fide doubt about competency if the evidence shows "recent severe mental illness, at least moderate mental retardation, or truly bizarre acts by the defendant." *Id.* Evidence capable of creating a bona fide doubt about a defendant's competency may come from the trial court's own observations, known facts, evidence presented, motions, affidavits, or any other claim or credible source. *LaHood v. State*, 171 S.W.3d 613, 618 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd).

■ The only evidence that would have suggested incompetency to the court at the plea hearing was appellant's response of "no" to the court's question of whether appellant was competent. The naked assertion, "I am incompetent," is not sufficient without supporting evidence to require an inquiry by the court. *McDaniel*, 98 S.W.3d at 711.

■ Nevertheless, as set forth in the background section above, after appellant told the court he was not competent, the trial court conducted an informal inquiry into appellant's competence. Appellant stated he was "slow learning." Appellant confirmed that, other than taking special education classes, he had never been told he needed special treatment or medical care for his condition.[2] Appellant stated that he understood the charge against him. Appellant's counsel stated he had no concerns about appellant's competency to go forward with the plea hearing. Except for

---

2. Appellant complains that the trial court did not inquire sufficiently about appellant's "just blanking out." When appellant made this comment, he had already indicated he had not been told he needed special treatment or medical care for his condition. After appellant made the statement, the court inquired whether appellant was "under the influence of anything" when he committed the offense. Appellant responded he was not.

lesser inquiry into communication between appellant and counsel, appellant's case compares favorably to *Gray v. State*, in which the Texarkana court of appeals held the record of the plea hearing showed the trial court conducted an adequate informal inquiry into the learning-disabled defendant's competency. *See* 257 S.W.3d 825, 828 (Tex.App.-Texarkana 2008, pet. ref'd).[3]

■ Assuming, without deciding, the evidence before the trial court warranted an inquiry into appellant's competency, we conclude the trial court's inquiry supports the conclusion that appellant had the present ability to consult with his lawyer with a reasonable degree of understanding and had a rational, as well as factual, understanding of the proceedings against him.[4] Accordingly, we overrule appellant's first issue.

### B. *Assistance of Counsel at a Critical Stage*

■ In issue two, appellant contends he was denied his right to counsel at a critical stage of the proceedings, specifically the period during which he could have filed a motion for new trial. A criminal defendant must file a motion for new trial no later than thirty days after the trial court "imposes or suspends sentence in open court." Tex.R.App. P. 21.4(a). This thirty-day period is a critical stage of a criminal proceeding, during which a defendant has a constitutional right to counsel.

*Cooks v. State*, 240 S.W.3d 906, 908 (Tex. Crim.App.2007).

■ To prevail on a claim of deprivation of counsel, a defendant must affirmatively show he was not represented by counsel during this period. *See Oldham v. State*, 977 S.W.2d 354, 363 (Tex.Crim.App. 1998). There is a rebuttable presumption a defendant's trial counsel continued to represent the defendant adequately during this critical stage. *Cooks*, 240 S.W.3d at 911. If a defendant rebuts the presumption with evidence he was deprived of adequate counsel during this stage, the deprivation of counsel is subject to a harm analysis. *Id.*

■ The rebuttable presumption of adequate representation arises, in part, because appointed counsel remains as the defendant's counsel for all purposes until expressly permitted to withdraw, even if the appointment is for trial only. *Nguyen v. State*, 222 S.W.3d 537, 540 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd). As this court explained in *Nguyen:*

> When a motion for new trial is not filed, courts apply a rebuttable presumption that the attorney discussed the merits of the motion for new trial with the appellant, and the appellant rejected it. The Court of Criminal Appeals indicated that appropriate rebuttal evidence would show that "trial counsel thought that his duties were completed with the end of trial, and had thereafter abandoned the

---

**3.** Sentencing is part of the trial, and a defendant must therefore also be mentally competent at sentencing. *See Casey v. State*, 924 S.W.2d 946, 948–49 (Tex.Crim.App.1996). To support his contention he was incompetent, appellant points to evidence from the sentencing hearing, specifically that he had never before committed an adult offense and had been influenced by a stronger personality to commit the present offense. Appellant, however, does not argue the sentencing court should have inquired further into the matter

of appellant's competency to be sentenced. Instead, he contends the plea hearing colloquy did not constitute a sufficient informal inquiry into competence.

**4.** Our holding should not be construed as approval of the trial court's entire colloquy with the defendant. Some of the trial court's questions were not relevant or properly focused on the criteria prescribed under Texas Code of Criminal Procedure article 46B.003(a).

appellant." Under *Oldham* and its progeny, an appellant's statement that he has not been represented since sentencing is not enough to rebut the presumption of effective assistance. Appellant must also show that counsel did not confer with him regarding the merits of filing of a motion for new trial.

*Id.* (citations omitted).

The record in the present case shows the following:

- on October 24, 2007, the trial court appointed John Reeves to represent appellant and "to continue to represent [appellant] until the case is concluded, including appeal, if any, or until released by written order of this court";
- on June 4, 2008, the trial court sentenced appellant;
- on June 12, 2008, Reeves filed an attorney fee voucher, in which Reeves showed services rendered from October 14, 2007, until June 4, 2008, and checked the "Final Payment" box;
- on June 26, 2008, appellant wrote to the court, indicating he would like to file a motion for "shock probation or T.D.C. boot camp and probation" and asserting Reeves had "essentially terminated [their] relationship" after the sentencing;
- on July 3, 2008, Reeves spoke with appellant by telephone, at which time appellant told Reeves he wanted a different sentence, wanted to "make a new deal in exchange for his testimony against [the] co-defendant," asked about a retrial and appeal, and informed Reeves he had talked to another attorney about his sentence and options;
- on July 7, 2008, thirty days after sentencing, Reeves, filed a notice of appeal and a motion to withdraw; and

- on July 10, 2008, the trial court granted Reeves's motion to withdraw and appointed new counsel for the appeal.

■ Appellant relies primarily on his June 26, 2008 letter to rebut the presumption of trial counsel's continued adequate representation. In addition, he points to Reeves's fee voucher claiming payment for work ending June 4, 2008, and to the late timing of Reeves's telephone conversation with appellant. Comparing this case with cases in which the court of criminal appeals has concluded a defendant did not rebut the presumption of adequate representation, we conclude appellant has not done so here. *See Smith v. State,* 17 S.W.3d 660, 662–63 (Tex.Crim.App.2000) (holding following facts insufficient to rebut presumption: appellant filed pro se notice of appeal and indigency; letter of assignment from trial court to appellate court stated attorney of record on appeal was "to be determined"; and appellant appeared without counsel when signing pauper's oath and requesting new counsel); *Oldham,* 977 S.W.2d at 362–63 (holding following facts insufficient to rebut presumption: appellant filed pro se notice of appeal and indigency; and letter of assignment from trial court to appellate court stated attorney of record on appeal was "to be determined").

Appellant, however, analogizes his case to *Prudhomme v. State,* 28 S.W.3d 114 (Tex.App.-Texarkana 2000, order), *disp. on merits,* 47 S.W.3d 683 (Tex.App.-Texarkana 2001, pet. ref'd). In *Prudhomme,* the Texarkana court concluded a defendant was deprived of his right to counsel in the thirty days in which he could file a motion for new trial and the denial was not harmless. *Id.* at 120. The *Prudhomme* court concluded the following facts rebutted the presumption of adequate representation during the thirty-day period: filing of a pro se motion for new trial, in which

Prudhomme complained about ineffective assistance of his trial counsel; failure to request a hearing; lack of presentment; filing of a pro se notice of appeal; and filing of a pro se motion to substitute trial counsel for an unnamed appellate counsel. *Id.*

The First Court of Appeals has declined to follow *Prudhomme. See Green v. State,* 264 S.W.3d 63, 70 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd) ("We ... disagree with the *Prudhomme* court's holding that a pro se motion for new trial effectively rebuts the presumption that trial counsel continued to effectively represent appellant during the window for filing a motion for new trial."). The court of criminal appeals has distinguished *Prudhomme* because of its apparent suggestion "that prejudice should be presumed when a defendant is without counsel during the entire 30–day period for filing motion." *Cooks,* 240 S.W.3d at 911. We decline to follow *Prudhomme* here.[5]

In short, appellant has not rebutted the presumption of adequate representation during the thirty-day period in which to file a motion for new trial. Accordingly, we overrule his second issue.

### III. Conclusion

Having overruled appellant's two issues, we affirm the judgment of the trial court.

SULLIVAN, J., concurring.

KENT C. SULLIVAN, Justice, concurring.

I respectfully concur. I agree with the majority's handling of the alleged competency issue presented in this appeal because appellant's conclusory self-diagnosis of incompetence, by itself, did not require the trial court to conduct a competency inquiry. *See McDaniel v. State,* 98 S.W.3d 704, 711 (Tex.Crim.App.2003). However, I write separately to note my discomfort with the apparent lack of specific, practical guidance given to trial judges under current law to assist them in resolving complicated questions as to a given defendant's mental competence to stand trial. This lack of a consistent, reliable competency-analysis process increases the risk of inconsistent outcomes at the trial court and may significantly complicate effective appellate review.

Generally, a trial court should undertake an informal competency inquiry if it receives information sufficient to raise a *bona fide* doubt about a defendant's competence, such as evidence indicating "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." *Id.* at 710; *Reed v. State,* 112 S.W.3d 706, 710 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd); Tex.Code Crim. Proc. Ann. art. 46B.004 (Vernon 2006). The issue, of course, is how a trial judge, who is likely untrained as to the relevant companion medical and psychiatric issues, can most reliably accomplish this feat before compelling a defendant to stand trial.

Trial courts face a somewhat similar dilemma in the civil context when required to evaluate potential scientific testimony.

---

5. We previously declined to follow *Prudhomme* in *Hardge v. State,* No. 14–00–01095–CR, 2001 WL 1340546, at *2 n. 5 (Tex.App.-Houston [14th Dist.] Nov. 1, 2001, pet. ref'd) (not designated for publication). In contrast, the Tyler court of appeals, from which this case was transferred, followed *Prudhomme* in *Hole v. State,* No. 12–06–00207–CR, 2007 WL 1868997, at *5 (Tex.App.-Texarkana, June 29, 2007, pet. dism'd) (not designated for publication). As unpublished cases, neither are precedential. *See* Tex.R.App. P. 41.3 (regarding precedent in transferred cases), 47.7(a) (stating criminal case opinions not designated for publication have no precedential value).

This responsibility sometimes forces a judge into the role of "amateur scientist." *See S.V. v. R.V.,* 933 S.W.2d 1, 41 (Tex. 1996) (Cornyn, J., concurring). In the civil arena, however, trial courts are at least given a more comprehensive set of non-exclusive factors to consider in discharging their duties as evidentiary "gate-keepers," and they benefit from an area of the law that is particularly well-developed through *E.I. du Pont de Nemours & Co. v. Robinson* [1] and its progeny.

Unfortunately, the workings of the human mind—the specific subject of a competency determination—may be too complex to allow for easy resolution under some brief list of non-exclusive factors. *See, e.g., S.V.,* 933 S.W.2d at 41 (Cornyn, J., concurring) ("[T]rial courts face additional problems in behavioral science cases ... because these disciplines cannot be readily evaluated under the nonexclusive factors enunciated in *Robinson.*"). Thus, in other jurisdictions, trial courts are encouraged to broaden their competency analysis by considering some of the following questions as appropriate:

(1) whether the defendant has sufficient mental capacity to appreciate his presence in relation to time, place and things;

(2) whether his elementary mental processes permit him to understand that he is in a court of law charged with a criminal offense;

(3) whether he realizes there is a judge on the bench;

(4) whether he understands that there is a prosecutor present who will attempt to convict him of a criminal charge;

(5) whether he understands he has a lawyer who will try to defend him against the charge;

(6) whether he knows that he should tell his lawyer all he knows or remembers about the events involved in the alleged crime;

(7) whether he understands that a fact-finder, such as a jury, will review the evidence in determining his guilt or innocence;

(8) whether he has sufficient memory and ability to formulate responses to questions posed to him, either on the stand or through informal, unrecorded conversations with his lawyer;

(9) whether he has established some degree of rapport with his attorney;

(10) whether he can follow the testimony and evidence reasonably well;

(11) whether he can meet stresses without having his rationality or judgment break down;

(12) whether he has at least some "minimal contact with reality";

(13) whether he has at least the minimum intelligence necessary to understand the events unfolding before him;

(14) whether he can confer coherently with some understanding of the proceedings;

(15) whether he can both give and receive advise from his lawyer;

(16) whether he can divulge facts with distress or paranoia;

(17) whether he can decide upon a plea or course of action;

(18) whether he can testify, if necessary and considered appropriate,

(19) whether he can make simple decisions; and

(20) whether he has a desire for justice in lieu of undeserved punishment.[2]

---

1. 923 S.W.2d 549, 557 (Tex.1995).

2. Similarly, many courts and experts consult a thirteen-point checklist known as the "McGarry Scale" to resolve competency questions. *See Stowe v. State,* 272 Ga. 866, 536 S.E.2d 506, 508 (2000), *overruled on other grounds by Sims v. State,* 279 Ga. 389, 614

*See State v. Guatney,* 207 Neb. 501, 299 N.W.2d 538, 545 (1980) (Krivosha, C.J., concurring) (citing *Wieter v. Settle,* 193 F.Supp. 318, 321–22 (W.D.Mo.1961)). Consideration of such a broad range of practical factors may provide better insight as to whether a defendant might lack (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or (2) a rational and factual awareness of the proceedings against him. *See* Tex.Code Crim. Proc. Ann. art. 46B.003(a) (Vernon 2006).

Admittedly, it is not for this Court to impose new competence-inquiry procedures on trial courts. However, in light of the constitutional implications involved, the trial court's competency determination should certainly not be rooted in simply hoping that a defendant can provide useful information in response to such questions as "Are you competent?" or "Are you insane?" such as were asked in this case. Incompetence to stand trial, of course, is not synonymous with legal insanity. *See McCoin v. State,* 56 S.W.3d 609, 613 (Tex. App.-Texarkana 2001, no pet.) ("Competence is only concerned with a defendant's present ability to comprehend and aid in his defense, whereas an insanity defense is concerned with a defendant's state of mind at the time of the commission of the crime."). To its credit, the trial court pursued the question of appellant's competence by asking him (1) whether he knew why he was in the courtroom that day, (2) whether he understood the nature of the charge against him, and (3) if he had been advised to seek medical treatment for his learning disability. However, because the law does not well equip trial judges to handle *closer* calls as to a defendant's legal competence, I respectfully concur.

S.E.2d 73 (2005); *State v. Garfoot,* 207 Wis.2d 214, 558 N.W.2d 626, 632 n. 7 (1997); *State v. Shields,* 593 A.2d 986, 1000 n. 23 (Del. 1990). Generally, the McGarry Scale examines the defendant's ability to understand the charges and course of proceedings, effectively consider possible legal defenses, participate in planning legal strategy, and communicate relevant facts as needed. *See Shields,* 593 A.2d at 1000 n. 23. A simpler formulation of these considerations, consisting of five factors, was adopted as the appropriate legal test in Mississippi. *See Martin v. State,* 871 So.2d 693, 697 (Miss.2004).